Thank you. Please be seated. The first case on our docket this morning is 20-30732 D&G Holdings, LLC v. Becerra. Mr. Shepard. Oh, yes. Thank you so much. Are they required to wear them in the courtroom here? I think so. Okay. That's my understanding. I appreciate it. I don't know. We'll check. Are you ready? Good morning, Your Honors. May it please the Court. My name is Ray Shepard. I'm here on behalf of the appellant, D&G Holdings, in this case. As you know, this is the second time we've been before this Court, a different panel of this Court, but the second time in the Fifth Circuit, relating to whether or not the district court has jurisdiction under the Medicare Act to hear the last step in D&G's administrative appeal. I'm going to begin with a couple of areas of agreement between the parties. It's important to understand that there are areas of agreement. First, the parties agree in this case that D&G's claims are inextricably intertwined with claims for benefits, and as the Court knows, the previous panel remanded this case for the district court's consideration of in re Benjamin, which basically held that if it's a claim for benefits, then it gets channeled through the Medicare Act, Section 504G. Otherwise, it doesn't. In this case, although Benjamin doesn't speak to claims that are inextricably intertwined, the Supreme Court did so in Heckler v. Ringer, and there's a string of Fifth Circuit cases previously that recognize that, in addition to just claims for benefits, claims that are inextricably intertwined with benefits are also channeled through Section 504G. If jurisdiction exists under 504G, that is the mandatory way to go. Even though the prior panel permitted D&G to amend to allege mandamus, mandamus cannot be used if jurisdiction exists under 504G, and we believe it does. The second area of agreement between the parties is that both the Secretary and D&G agree that because the claims are inextricably intertwined, that they must be channeled through Section 405G of the Medicare Act. This is consistent, the Secretary's position is consistent with the letter that we received when the Medicare Appeals Council reversed the overpayment determination. At page 357 of the record on appeal, you can see the language. The Medicare Appeals Council stated that we had the right to judicial review, and we had to file our complaint within 60 days, and we did so. So that's the second area of agreement, and you might wonder, why are we here? If the parties agree that the claims have to be channeled through Section 405G, why are we back in this court? And the answer is twofold. First, the district court believed that the prior panel of this court already decided the jurisdictional issue when it remanded the case. A third area of agreement between the Secretary and D&G in this appeal is that the district court was wrong when the court believed that the prior panel of this court had already decided the jurisdictional issue when it remanded. The remand language that the prior panel included in the opinion gave some instructions to the district court on remand, and basically it was a clue. The panel stated that the Fifth Circuit's classification of the Novotaz's repayment determination would be, quote, would be relevant to the 405G analysis under Benjamin. The court was not attempting to decide the issue. There would have been no reason for the remand in that language if the court had been deciding that issue. The district court cited Alpha Omega insurance, which indicates that the court believed that that was the law of the case. Well, it wasn't the law of the case because Alpha Omega makes it very clear that the law of the case applies only to decisions actually made by the appellate court, not ones that could have been made but were not. So the Secretary and I agree that the district court erred in believing itself bound by the remand language of the prior panel. So if that's the case, why are we still here? Well, the Secretary says notwithstanding all those agreements, on the same day that they filed their appellate brief in this case, they also filed a notice – a motion for judicial notice of a letter from Novotaz, the CMS carrier in this case, the contractor, purporting to reopen the repayment decision. There was some motion practice back and forth, but basically the Secretary incorporated that new letter as an indisputable fact and wants this court to take judicial notice of it. This court absolutely should not do so. Although the Secretary has weaved that argument throughout their brief in this case, that letter is unlawful. The reopening is unlawful. It's unlawful for a couple of different reasons. Number one, it's ultra-virus. And the Supreme Court set forth the standard for what is ultra-virus action of an agency in the city of Arlington that's cited in our brief. Basically, if the Secretary does something that the Medicare statute itself or his own regulations don't permit the Secretary to do, then it's ultra-virus, meaning that it's unlawful. In this case, Section 1395FFB1G is the statutory provision, Title 42, that controls reopenings in Medicare cases. The regulation that mirrors that statutory language is 42 CFR Section 405.980AI. Both of those sections are cited in our brief. Essentially, what the statute and the regulation says is that the Secretary may reopen only initial determinations or redeterminations. That's it. The repayment decision in this case was neither. Now, let's talk about initial determination first. The one issue that the prior panel did decide the last time we were in the Fifth Circuit was that the district court's characterization at that time of the repayment decision as being akin to an initial determination was wrong. Let me ask you a question about that. But for the January letter from Navitas, is there anything different about this case from when it was before this court previously? No. Other than the only thing that's different is that the court decided one issue previously, and that was that the repayment decision was not an initial determination. Right. Did you ask the court at that point, based on Benjamin, to go ahead and find jurisdiction over this case? Absolutely, Your Honor. And they just decided not to do it? The reason that the district court decided not to do it is— I don't mean the district. I'm sorry. I'm talking about this court. You argued— Oh, no. In the prior appeal, I didn't say, Your Honors, go ahead and find jurisdiction. The court made it clear that they wanted to give the district court an opportunity to consider Benjamin, which at that time was a brand-new decision that the court felt was pertinent. Had you analyzed and argued Benjamin at all? Yes. We had discussed— In the prior appeal? Yes, in the prior appeal. Yes, we had. It was a fairly new decision, but it was briefed. It was argued. But the district court—it was briefed in the Fifth Circuit, but the district court didn't have the opportunity because the case came out after the— Well, I understand that. Well, let me just ask you a simple thing or my simple-minded question, and don't worry if you think I'm just totally out to lunch. I wouldn't say that, Your Honor. If you characterized the—because the court in the earlier case said this is not an initial—the characterization was akin to an initial determination, then the only question is whether it was part of the original initial determination or whether it required exhaustion as a new initial determination. That was essentially the issue presented, Your Honor, and that brings up the different viewpoints of how—what this case is. In our view, this case is the last step in an administrative appeal, and this court so described it in the case called MaxMed 2017 decision that's cited in our brief. And when the court described the appellate process for these Medicare overpayment claims in MaxMed, the court—this court made clear that the right to judicial review was the last step in the administrative process. Well, I understand that, but they're arguing a little bit before that, and what they're saying is that if we get by this January 21 matter, they're saying that this is a different determination. Right. What the secretary is trying to do, Your Honor, respectfully, is to destroy jurisdiction in this court unilaterally by having the secretary or the secretary's contractor in this case quote-unquote reopen something they cannot do, the repayment determination, that decision. They treat it as a separate decision, which is not part of the admittedly exhausted administrative appeal. We disagree with that. We also disagree, as I've just stated, that the secretary has the authority under the Medicare Act to quote-unquote reopen that repayment determination. They absolutely do not. They do not because the secretary can only reopen an initial determination. This court's already decided that that was not an initial determination or a redetermination. And clearly, if you read the definition of a redetermination, it's neither an initial determination or a redetermination. Well, counsel, let me stop you there, though. I mean, so this court has said that whatever this is, it wasn't an initial determination. Correct. So is that the end of our jurisdictional inquiry under 405G? I mean, isn't it that jurisdiction attaches to appeals of initial determinations or am I misunderstanding? Let's put the letter aside for a moment. Right. The answer is no. And here's why. Tell me what it is then. Okay. So the Supreme Court in Heckler v. Ringer and this court in Benjamin, you look to what Benjamin said. The primary holding was the types of appeals that go through the Medicare program, 405G, are those that involve a claim for benefits. In Heckler v. Ringer, the Supreme Court said that's true. However, you also channel through Section 405G claims that are inextricably intertwined with claims for benefits. All parties agree that the initial appeal in this case, which was involved in overpayment, was clearly straight out claims for benefits. And so that's why we went through the administrative process. So the question before the district court was, well, is this a new matter filed in district court or is it, as the court said in Maxmed, the last step in the appellate process? It's the last step in the appellate process. And not only did this court say that in Maxmed, but the Supreme Court in Berryhill and also Berryhill cites an older case called Hudson. And in Hudson, the court said, and I think this answers your question, Judge Wilson, is that in these types of Medicare appeals, the district court is not sitting as a traditional appellate court. They're sitting sort of as a co-participant in the administrative appeal process. And they said that because if you look at Section 504G, it gives the court the authority to remand or the secretary to request the court to remand for additional factual findings and it goes back and forth. It's not just that you're reviewing the record and that's it. And so I hope I've answered your question that this is, the jurisdictional question does not end with the last panel's finding that it's not an initial determination. Put it in simpler terms. I'll try. This business about inextricably intertwined is jurisdictional in the sense that the appeals, they had to go up, your client had to go up to the appeals council to determine whether there had been any underpayment whatsoever. And the appeals council decided that. It put a number on that underpayment. And the rest of it is post-judgment enforcement of that ruling, right? Sort of, Your Honor. The Medicare appeals council did not put a number on anything. They just simply found that the overpayment alleged was improper. And so that number they found to be incorrect. Right. And so what was left to be done was simply to repay the monies recouped. Well, exactly. And that wasn't done. That's why we're here. Exactly. So it's all, it's still essentially post-judgment enforcement of what the appeals council did. That's right, Your Honor. And that's a matter of numbers. It's not a matter of the law. And therefore, you have, your client has exhausted their remedies appropriately. I agree with that, Your Honor. I thought you might. I was just trying to slice through the morass of the law. Yes. I agree with that 100%. And I believe if the court, as I've asked in my motion, declares the January 22nd quote-unquote reopening letter ultra-virus, I believe that Mr. Anderson will be forced to agree that Your Honor is exactly correct and we should be channeling this case just like any other through Section 504G. The fact that the post-judgment enforcement of the order is something that wasn't decided by the secretary does not prevent jurisdiction. Illinois Council, the Supreme Court, made very clear that the district court has the authority to consider any statutory dispute not considered by the agency and to make an evidentiary record if necessary. So Section 405G is the way to go. There's a second reason that the court should declare the secretary's January 22nd letter reopening as unlawful. In addition to it being against the authority in the Medicare Act, the Seventh Circuit had a very similar situation, and that was in the doctors, nursing, and rehab case, Seventh Circuit case that we've cited in our brief. There the court found it was a question of first impression, I believe it was 2010, so it's been a while, but it doesn't come up that often, that whether the Medicare secretary could destroy federal appellate jurisdiction by quote-unquote reopening administrative claim. This case is even more powerful because we have it being contrary to the Medicare Act itself, but there they just asked does the secretary have that authority on his own, even if it's an authorized reopening, and the court said no, and they had two primary reasons that are applicable in this case. Number one, the court, as you know, always determines jurisdiction at the time that the claim is filed, and so if you look at the facts as they existed at the time that we filed our complaint, there was jurisdiction, we believe under 405G initially, but also under mandamus, and if I have time I'll get to that. The second reason the Seventh Circuit said that that was improper is that Congress in the sixth sentence of section 405G spoke to the issue of the ability of the secretary to unilaterally remand cases on appeal, and the Seventh Circuit said they do not have that authority. Congress has restricted it because the statute 405G allows the secretary to ask the court, the district court, to remand for additional factual findings, and because of that the court said that that necessarily implied that Congress limited the secretary's ability to unilaterally take away federal jurisdiction. Finally, with respect to mandamus, I only have two seconds. I'll try to address that on my rebuttal, but we believe there's jurisdiction under 504G. Thank you. Thank you, counsel. Mr. Anderson. Thank you, Your Honor, and may it please the court. Edmund Anderson for the Secretary of HHS. In his complaint, and indeed in its argument, D&G discusses two separate decisions made by the secretary. The first decision is the counsel's decision overturning the overpayment determination. In that decision, D&G channeled its claim through the administrative process, received a final decision, and is not challenging anything mentioned in the counsel's decision. The second decision. So what's the need to reopen? I'm sorry, Your Honor? So what is the need to reopen? In Medicare context, the counsel doesn't decide the actual amounts, the money amounts. The Medicare contractor, the Medicare administrative contractor, is the entity that has access to the electronic claim systems which all claims go through. D&G filed the electronic claims. That's kept in Medicare's electronic claim system, and that's how the claims are dealt with. So the counsel in this decision was determining whether the claims were payable. The counsel wasn't determining the amount of the claims. So when the counsel makes a determination as to whether the claims are payable, initially the Medicare administrative contractor indicated that these claims were not payable. The counsel overruled that decision. When that happens, then the Medicare administrative contractor has to go in, reopen those claims, and mark them as payable. And then the Medicare system automatically pays those. So a reopening is an actual change in the nature of the claims as listed in the Medicare system. Did I answer your question? Not really, but go ahead. Okay. Counsel, then let me ask you this. We get to the end of the appeal process. The appeal counsel says the contractor wrongfully recouped this money. D&G should have been paid this money. They were properly paid this money. So your position is that we can't get into how much money is owed for the effectuation until a new proceeding goes forward. Is that right? Or the contractor actually has the wherewithal to come up with the amount of money, the amount that's owed. Then why don't we take what D&G pleads is owed as established?  In the counsel's decision, the counsel did not make any rulings or findings regarding recoupment. Recoupment is not an initial determination challenged through the administrative process. The point that the counsel was determining was whether the overpayment determination was supported by the records in the file. And the counsel made the determination, regardless of what D&G was saying, that the records was in such disarray that it did not support the overpayment determination. Not because of D&G, but because of Medicare's contractor. Indeed. As a matter of fact, the counsel rejected D&G's arguments regarding its proper submission of claims. The counsel made specific findings saying we don't believe that they submitted the proper, that these claims were submitted properly. But the record itself is in such disarray, it can't support the overpayment. So what we had was a finding on claim eligibility, a finding of whether the claims meet Medicare requirements. That was what the counsel decided. And after that happens, even if it's at the reconsideration level or at the ALJ's level or at the counsel level, any time a claim, any time determinations regarding claims are made that overturns the initial determination by the Medicare administrative contractor, that contractor then has to go back and find out, okay, what does this mean in regards of money? And in this situation, the contractor may Well, the contractor doesn't get to relitigate whether the claim was properly submitted, does it? No, absolutely not. Then why does it have to pay back every penny that it said was an overpayment? And that's what the contractor did. The contractor has to make specific, the contractor has the information. The contractor has the amounts that were paid, the claim I thought the parties agreed that it was about $4.1 million that had been recouped without authorization. No, Your Honor. As a matter of fact, even Go ahead, excuse me. Even D&G put out two different amounts in its pleadings prior to its amended complaint. D&G submitted arguments to the district court with affidavits from its expert witness saying the amount was not that was recouped could be $4.1 million or it could be the $1.9 million that the secretary says was recouped. And that all depends on how you understand the coding regarding the specific claims. So D&G itself said that these amounts, it could be two different amounts in its own pleadings. So what we have said and what we have consistently said was that the amounts recouped was approximately $1.8, $1.9 million, and then that money was returned. D&G is seeking an additional $2.3 million. And in doing so, it is challenging a second decision that was rendered by the secretary. Now, D&G says why we hear that. Counsel, you say that the secretary's position has always been that it's $1.8 or $1.9 million, but you've also said that you can't tell. I mean, our court, in the prior opinion, said that the secretary and the agency had no idea what was going on, no idea what was owed at all. So how do you substantiate it compared to what D&G says is owed? That seems a little inconsistent to me. Your Honor, I can't characterize what the prior panel relied upon. I can state that what was submitted in this case and what was submitted to the district court was an affidavit of $1.8 million. It was an affidavit by the Medicare administrative contractor that went through the claims and found that we made an error when we initially paid the money back. And that error, because every time we asked them to look at this, we asked them to look at everything, because we want to get it right. I have to wonder about that, because I don't know. The appeals counsel order says we reverse the QIC's reconsideration, which affirmed the overpayment determination. That overpayment determination must have been more than $4 million. I thought that was something like $8 million. So that's out the window. So the only question is how much was recouped illegally? Your Honor, first of all, I have to disagree with the illegal recoupment, because the statutes provide for this type of situation. I understand, but recoupment is like a garnishment. And during the time that this was being litigated, the agency recouped over $4 million. That was not disputed. They recouped it. Now you're trying to back end in there and say, well, they didn't have a right to that money from which there was recoupment, right? Your Honor, we have to disagree, and that is the crux of what we're dealing with here. DNG is saying that the agency recouped $4.1 million. But DNG has presented nothing in its complaint to support that assertion. Well, excuse me, sir, but what about the 1099 from Novitas that says DNG holdings? No, that's a different one. On the amount of recoupment, there's an inconsistency that says there's a 1099 that DNG was paid almost $3.5 million during 2017. And, Your Honor, DNG also submitted, as stated before. That 1099 comes from the payor, not from the payee. Yes, Your Honor. And in the council's decision, the council actually examined other 1099s and found that those were sent in error. So there were, I'm not saying that the council records were perfectly accurate. Obviously they weren't, because that's what was part of the council's decision. But the council made findings regarding erroneous 1099s submitted. But what DNG itself submitted were specific accountings regarding the electronic transmittals and what it determined the amounts were. Well, counsel, so our prior panel in this court said that whatever this is, the amount of money in dispute is not an initial determination. Yes, Your Honor. What is it? We assert that it is an initial determination. No, we've said it's not. I understand, Your Honor. So what is it? I understand. Herein lies the problem. Because in 1395 FF, plaintiff claims that this action has jurisdiction under 1395 FF and 405 G. Yes, but they say that the reason that is is because it's an extension of the prior appeal process. In other words, it's the conclusion, not the beginning. I'm asking you, what is it? And, Your Honor, what I have to say is, what it is, is not something that Congress authorizes jurisdiction in 1395 FF or 405 G. So a plaintiff is without remedy. Your Honor, again, plaintiff is creating an argument to basically avoid the administrative process. Well, that's ridiculous. With great respect. And, Your Honor, what I have to say is, if we look at what Benjamin says. They went bankrupt in the administrative process. They didn't avoid the process. Your Honor, with all due respect, D&G stopped participating in the Medicare program because their ability to participate in that program was revoked. They did not stop participating in the program because they went bankrupt. That's neither here nor there. Well, I didn't mean bankrupt in the technical sense. Back to the question, what is this? Your Honor, what I can say, and please, if you will allow me to continue, what I will say is that what this is, is not something that Congress authorized jurisdiction for. Congress had no premonition that there might be a dispute over the amounts owed at the end of the appeal process. I'm not saying that. What I am saying is, if the court takes D&G's argument at face value, if the court accepts D&G's argument that this is not an initial determination, then the only answer Congress provides in 1395 FF is that there is no administrative or judicial appeal under 1395 FF. 1395 FF says that the action, the decision reviewed by the secretary has to be an initial determination. Let me just suggest this. You say that suppose after the appeals council had ruled, whoever was, I forget which entity was deciding the amount of  $100,000, you're saying there's no judicial review of that and that would have been plainly, you know, outrageously low? No, Your Honor. What I am saying is that D&G, under the regulations, under payments, which is what that effectuation decision was, under payments are initial determinations. That's in 42 CFR 405.424B10. Amounts calculated as a result of an underpayment and determinations of underpayments are initial determinations. Now, the court did not examine the regulations regarding initial determinations in its prior pleadings. The court looked at 1395 FF A and said, oh, this doesn't look like an initial determination. But what 1395 FF A actually states is that the court, the secretary shall promulgate regulations regarding initial determinations and follow those regulations. The secretary promulgated regulations for initial determinations in 424 point, in 405.424. So the prior panel was just wrong? Is that your position? As a matter of law? Yes, Your Honor. How do you get around law of the case? And if they're so wrong, why didn't the secretary ask for en banc or panel reconsideration? Your Honor, en banc and panel reconsideration are reserved for serious issues involving nationwide context. And we did not believe. What about law of the case? Under law of the case, Your Honor, the district court was bound by that decision. Well, so are we. But under the law of the case, Your Honor, actually you're not. It's a prior panel decision that binds us. If it is under law of the case doctrine, if it is a mistake in law, the panel, the subsequent panel is not bound. Let me ask you this, counsel, assume this is not an initial determination. Yes, Your Honor. Just assume that. Is there any authority for the secretary's January 2021 letter? Yes, Your Honor. And this is the point of Benjamin was that. No, no, no, no, no. That's just I got to be conceptual. I'm not an expert in this like you are in terms of regulations. What I'm asking is correct me if I'm wrong. My understanding is the secretary can can reopen an initial determination. Yes. Or reopen a reconsideration of an initial determination. Right. Yes, Your Honor. If it's not an initial determination, by what authority did the secretary issue that letter? The secretary has the authority to to to manage the Medicare administrative product, the managed the Medicare to manage Medicare and its administrative process. But let's talk about the letter and the authority for that letter. If this is not an initial determination. If it is not initial determination, then it is categorized as one of those decisions that are not initial determinations. And those decisions, the secretary makes findings on those decisions repeatedly dealing with the amount of hospital. But we're talking about a reopening of something. Right. And if it's not an initial determination, I'm trying to get at the power to reopen. And what I'm saying, Your Honor, is that in 1395 FF, Congress specifically allows the secretary to reopen. It doesn't prohibit the secretary from reopening other decisions that are not initial determinations. And indeed, the secretary constantly changes things like things that are not determinations, things like payment amounts, reimbursement amounts. The secretary does that on a routine basis. Is that because its contractors screw up on a routine basis? Your Honor, if the contractor makes a mistake, it should have the ability to correct that mistake. And if you, again, if we look at this from the perspective of the contractor, what DNG is saying at face value is that if a contractor makes an obvious mistake, an obvious mistake in calculations. Sir, may I suggest to you that's easily resolvable in judicial proceedings? I mean, first, there's my analogy to a post-judgment effectuation. But secondly, when we have Medicare fraud cases, which the government pursues very vigorously, we quite often determine coding, and we determine amounts based on what the government represents to us. This is easily administrable. This is not something that dramatically affects the ongoing, you know, uniformity of the program. Yes, Your Honor, but the court cannot establish jurisdiction on its own. And what DNG has alleged is that this court has jurisdiction of 1395 FF and 405 G. But its challenge to the effectuation decision does not meet any of those requirements. Well, then, counsel, do you concede that there's mandamus jurisdiction? No, Your Honor, because while under the court's decision in Wolcott, Wolcott specifically deals with this issue. Wolcott says that 405 H's preclusion provision, in the second sentence of 405 H, precludes mandamus jurisdiction when a party is seeking to challenge findings related to Medicare claims and reimbursements. And in page 444 of plaintiff's opening brief, plaintiff says in a footnote that its appeal concerns additional claims for benefits that were properly payable to DNG for services rendered. So under the court's decision in Wolcott, which specifically addresses this issue, Wolcott dealt with mandamus and 405 H in a Medicare reimbursement context. That decision is actually binding here. It's not binding on the fact that DNG has mandamus jurisdiction. And furthermore, DNG, as stated before, it can't assert that it has a clear right and the secretary has a clear duty to pay the $2.3 million because that was based on the $4.1 million, which the district court said DNG offered no explanation for. But at the pleading stage, were they required to do that? Yes, Your Honor, they at least Why wouldn't we take their allegations at face value in the light most favorable to them like we would any other 12B6 motion? Well, the court has to take assertions at face, Your Honor, I see my time has expired. May I continue? The court has to take and should take pleadings at face value, but under Twombly, mere assertions can't make that burden, especially when DNG is bound by its own previous statements, which clearly asserts it can't make that burden. It was actually unsure of what the amount was. It offered two separate amounts supported by its own expert witnesses who examined its own receipts. So DNG itself is asserting that it could be multiple amounts. If there are no further questions. I have one. If it's not mandamus and it's not an additional determination, where are we? And my best answer to this case is how the system, how Congress actually established the system. And we are set up outside of that. How Congress established the system, and DNG has said repeatedly that claims are channeled. But the problem here is this claim was not channeled through the administrative process. DNG's challenge to the effectuation decision was not channeled. It was not presented to the secretary. It did not receive a redetermination decision as required by 1395FF. It didn't exhaust its administrative rights under 405G as required. This court has repeatedly held that these types of decisions, decisions that arise under the Medicare Act, must be channeled. This decision was not channeled. So under this court's previous holdings and under the Supreme Court holding, this court does not have jurisdiction over this section. Now, how the... You didn't answer my question directly, and you are out of time. Give me a section where they have a right. If we say it's not an additional determination, there's no mandamus, give me a section where they can get relief. And what I'm saying, Your Honor, Congress did not provide... Congress did not provide jurisdiction for the court to consider that issue. That is my answer. That's the only answer I can provide. Your Honor, respectfully, nothing that Mr. Anderson just said is correct. Illinois Council discusses exactly the situation. The underlying claim doesn't have to be channeled through the administrative process. If there's a constitutional or statutory issue that the Secretary cannot decide as part of the administrative process, Illinois Council says that the district court has the authority to consider that in the last step of the administrative appeal. And that's where we are here. I want to speak quickly to the... I think it's important, Judge Jones, you pointed out the 1099. I think that was great. The recoupments in this case occurred over a multi-year period. 2017 was the last of those years. If you look just at the 1099, which is something that Novitas produced, not us, that establishes an additional amount recouped, assuming the 1099 is correct, of $1,662,031.45 that we have yet to receive just for year 2017. Plus, the Secretary admitted in argument below that they have not paid any interest in this case. And that is clearly required by the statute. So, when you get to mandamus, the district court said, well, you haven't pled to the penny how much you're owed, and therefore the court would have to determine that, and therefore you haven't alleged a clear right to relief. Respectfully to the district court and to Mr. Anderson, that is not the standard. We have established a clear right to relief. We simply don't know the exact amount. Counsel, what is the standard in a 12B6 involving mandamus? I mean, is it the same that we're supposed to just take the pleadings at face value, or is there something else? You're exactly right. It's the same, and the court didn't do that. The court required us to prove to the penny in our pleadings how much was owed to show the mathematical calculation, and that's not the law. And one last point, if I may. I have one second. The prior panel was 100% correct in its ruling that this was not an initial determination. There is no quote-unquote underpayment in this case, as Mr. Anderson was trying to say. The appeals counsel decision made clear that all of the claims were properly paid, and that the amount recouped was done improperly. So there was no underpayment. There was a determination that the claims were properly payable, and there was no overpayment. That's not the same as saying there's an underpayment.